BARRETT S. LITT, SBN 45527
E-Mail: blitt@kmbllaw.com
RONALD O. KAYE SBN 145051
E-Mail: rok@kmbllaw.com
Kaye, McLane, Bednarski & Litt, LLP
234 Colorado Boulevard, Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

Attorneys for Plaintiffs

[Additional counsel for Plaintiffs listed on following page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL THATCHER AND JEANETTE THATCHER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SANTA CLARA, AND DOES 1-10, et al.,<br><br>Defendants | CASE NO:<br><br>CLASS ACTION COMPLAINT<br><br>42 U.S.C. §1983;<br>VIOLATIONS OF SHERMAN ANTITRUST ACT (15 U.S.C. § 1, et seq.)<br><br>JURY TRIAL DEMANDED |

MICHAEL S. RAPKIN, SBN 67220
E-Mail: msrapkin@gmail.com
SCOTT B. RAPKIN, SBN 261867
E-Mail: scottrapkin@rapkinesq.com
Rapkin & Associates, LLP
723 Ocean Front Walk
Venice, California 90291
Telephone: (310) 319-5465
Facsimile: (310) 319-5355

CAROL STRICKMAN, SBN 78341
E-mail:  carol@prisonerswithchildren.org
Legal Services for Prisoners With Children
1540 Market Street, Suite 490
San Francisco, CA 94102
Telephone:  (415) 255-7036
Facsimile:  (415) 552-3150

Attorneys for Plaintiffs

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# I.     INTRODUCTION

1.     Thousands of Santa Clara County jail inmates and their families, most of whom are not convicted but facing charges, are held hostage to grossly unfair and excessive phone charges, forcing them to pay these charges in order to maintain contact with their loved ones who are incarcerated. These charges are nothing but money making schemes by Santa Clara County and its jail to force family members desperately trying to maintain contact with their inmate husbands, parents and children to pay for totally unrelated jail expenses or give up their primary lifeline of communication.  Santa Clara County runs one of the largest jails in the US, and essentially extorts monies from mostly poor and minority families trying to get by and stay in contact with loved ones. It does so by establishing extortionate and outrageous "commissions" to be paid by this vulnerable population to fund the jails.

2.     The Federal Communications Commission ("FCC") has recently taken decisive action. After many years of deliberation, on October 2, 2015, it reached the decision that it would set standards for ICS rates in order "to rein in the excessive rates and egregious fees on phone calls paid by some of society's most vulnerable: people trying to stay in touch with loved ones serving time in jail or prison." FCC Press Release. https://www.fcc.gov/document/fcc-takes-next-big-steps-reducing-inmate-calling-rates. The FCC observed that "contact between inmates and their loved ones has been shown to reduce the rate of recidivism," but "high inmate calling rates have made that contact unaffordable for many families, who often live in poverty." Reducing the cost of calls "measurably increases the amount of contact between inmates and their loved ones, making an important contribution to the criminal justice reforms sweeping the nation." As Federal Communications Commissioner Mignon Clyburn has said, this system "is inequitable, it has preyed on our most vulnerable for too long, families are being

1

further torn apart, and the cycle of poverty is being perpetuated." She further added that the prison phone industry was "the most egregious case of market failure" she has seen in her career. This lawsuit seeks to put an end to this unconscionable practice by Santa Clara County.

3.     On November 5, 2015, the FCC released a "Second Report and Order and Third Further Notice of Proposed Rulemaking" (FCC-136) which establishes rate caps on interstate and intrastate calling rates and either eliminates and restricts the fees inmate telephone providers could charge.

4.     This action against the County of Santa Clara, along with soon to be filed lawsuits against San Mateo County, Contra Costa County, Alameda County and previously filed lawsuits against Los Angeles County, Orange County, Ventura County, Riverside County and San Bernardino County, specifically concerns the role of local California counties and jails, which collect unconscionable "commissions" as payment for granting the exclusive telephone link through which inmates in their various jails can communicate with the outside world, including family, friends, bailbondsmen, legal counsel and others (hereafter collectively "Call Recipients"). That these counties fully understand the injustice they are inflicting, even while they continue it, is captured by the statement of former Los Angeles County Supervisor, Zev Zaroslavsky, "Everyone's making a lot of money at the expense of inmates' families. They're in jail. They're paying their debt to society. *That doesn't give us the right to fleece them*." (emphasis added).[1]

5.     The phone systems are commonly referred to as an Inmate Calling System ("ICS"), which is the term used by the FCC when addressing them.

---

[1] See David Lazarus, *Gouging L.A. County Inmates With High Phone Fees*, The Los Angeles Times, September 8, 2014.

Counties like the County of Santa Clara enter into exclusive contracts granting to telecommunications companies, the most common of which are Global Tel*Link Corporation ("GTL") and Securus Technologies, Inc. ("Securus") (hereafter collectively the "telecommunications companies"), the exclusive right to establish a phone system through which inmates – both pretrial and convicted – may communicate with Call Recipients, who have to establish a pre-paid account with the telecommunications companies and are charged unreasonable, unjust and exorbitant rates, the lion's share of which are in turn paid to the Santa Clara County as what are euphemistically referred to as "commissions." Said telecommunications companies are common carriers within the meaning of the Federal Communications Act. Under this scheme, the County of Santa Clara and its jails receive a **guaranteed $1.7 million dollars annually**, which comprises the majority of the collected charges.

6.      Notably, the State of California provides a stark contrast to the practices of the County of Santa Clara.  California's practice establishes that there is no meaningful basis to contend that exorbitant phone rates and commissions are necessary to cover the costs of the service.  In August 2007, California began to phase out commissions at its state prisons, ultimately eliminating them in 2010. Prior to August 2007, calls from California's prisons were $1.50 + $.15/minute for local calls, $2.00 + $.22/minute intrastate and $3.95 + $.89/minute interstate. Now, with no commissions, current per minute rates for intrastate and local calls are $0.135 and $0.09, respectively, and the cost of an intrastate 15 minute call is $2.03.  Thus, the same 15-minute intrastate call without the commissions is 61.70% less than when the State received commissions ($3.27 differential in the post commission fee divided by $5.30 total fee when commissions were used).

7.      These payments, euphemistically called "commissions," are an integral part of a scheme by virtue of which the County of Santa Clara and the

telecommunications companies conspire and share in charging Call Recipients unjust, unreasonable and exorbitant rates to communicate with inmates, as well as fees that are illegal under California law. The rates charged to inmates and their families, friends and associates are far greater than those paid for ordinary telephone service.

8.      These unjust, unreasonable, excessive and unlawful fees work a terrible hardship on inmates, and their family, friends and associates who bear the brunt of the charges. Most inmates of Santa Clara County jails are relatively poor and lack significant financial resources; they are disproportionately people of color, especially African-American and Latino; many suffer from serious mental illness. Their families, friends and associates similarly are relatively poor, people of color and lack significant financial resources. The charges at issue in this complaint unlawfully put the burden on inmates' families, friends and associates of paying for County services and costs that are rightfully the responsibility of the taxpayers and society at large. These practices limit contact between inmates and their families, friends, associates and other Call Recipients due to their exorbitant costs, resulting in greater isolation for inmates and reduced support, and undermining the objective of returning inmates to the community with greater and stronger ties. Many people are forced to limit their contact with inmates far more than they would wish because of the cost.

9.      Although the Complaint identifies Defendant County of Santa Clara, the Sheriff's Department of Santa Clara County is a part of that County and, as the term "County" or "County Defendants" is used in this Complaint, it encompasses the Sheriff's Department of Santa Clara County as well as the County at large.

10.     Plaintiffs seek damages and injunctive relief, including refunds of the unlawful sums they paid described in this Complaint.

11.    Defendant Santa Clara County's wrongful conduct involves relatively small amounts of damages for each class member. Defendants are carrying out a scheme to deliberately collect unlawful but small sums of money from large numbers of Call Recipient Class Members and Inmate Class Members. Call Recipient Class Members are individuals who accept calls from the incarcerated inmate, and set up an account with the third party phone providers. Inmate Class Members are the incarcerated individuals who use the telephone to contact the Call Recipient Class Members. The Defendants conduct unlawfully burdens Class Members' ability to communicate with loved ones, friends, associates or persons important to their or their loved ones' legal situation. Each class brings this action on their own behalf and on behalf of all others similarly situated.

12.    The gravamen of this Complaint concerns the County of Santa Clara's liability for 1) violation of 42 U.S.C. §1983 (for depriving inmates and their families and associates their First Amendment rights of association, and unconstitutionally conditioning their use of the phones on such outrageous charges in violation of the Fifth Amendment's due process and unlawful takings provisions, and 2) a violation of the Sherman Antitrust Act, 15 U.S.C. §1, et seq.

13.    Plaintiffs anticipate that the Complaint will be amended to add additional Named Plaintiff Class Representatives for the County of Santa Clara.

## II.    JURISDICTION AND VENUE

14.    Plaintiffs present federal claims for relief under 42 U.S.C. §1983 and 15 U.S.C. § 1, et seq.  Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343.

15.    Plaintiffs' claims arise out of acts of the Defendants in Santa Clara County, located within the Northern District of California.  Accordingly, venue is proper within the Northern District of California.

16.     All Plaintiffs – whether inmates for whom a third party ICS account was in the past or present established, or will in the future be established, and Call Recipients who establish the ICS account (defined more fully in ¶1, *supra*) – have standing because both inmates and Call Recipients suffered an injury in fact. Inmates, even if they did not pay or contribute to payment for the ICS, were and will be injured because the unlawful conduct alleged herein restricted their practical ability to communicate with the outside world. Call Recipients were injured both because the unlawful conduct alleged herein restricted their practical ability to communicate with inmates and because they paid for unlawful fees and charges.

## III.   PARTIES

### A.   PLAINTIFFS

17.     Plaintiffs Michael Thatcher and Jeanette Thatcher are the parents of Daniel Thatcher, who was a male inmate at the Santa Clara Main Jail in San Jose, California since March 2015.  Mr. and Mrs. Thatcher directly bear the cost of the charges for telephone calls made by their son Daniel.  Therefore, Plaintiffs Michael Thatcher and Jeanette Thatcher qualify as the payors of said fees.

18.     Defendant Santa Clara County (hereafter "County") is a public entity organized and existing under the laws of the State of California. The Santa Clara County Sheriff's Department (hereafter "SCCSD") is a public entity within the meaning of California law, and is an agency of Santa Clara County (Defendants Santa Clara County and the Santa Clara County Sheriff's Department are hereinafter collectively referred to as "County Defendants"). The County is sued in its own right for a County and/or SCCSD policy, practice or custom which caused Plaintiffs' injuries in violation of one or more federal rights. ,

19.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these Defendants

by such fictitious names. Plaintiffs will give notice of this complaint, and of one or more DOES' true names and capacities, when ascertained. Plaintiffs are informed and believe, and based thereon allege that Defendants DOES 1 through 10 are responsible in some manner for the damages and injuries hereinafter complained of. Because there are numerous Defendants, each of which may have Doe Defendants that should appropriately be named in the Complaint, ten Doe Defendants may be inadequate. Plaintiffs reserve the right to seek leave to add Doe Defendants.

20.    Individual Defendants from Santa Clara County (although not currently named, but who may be named in the future) may at times be referred to herein collectively as the "Individual Defendants."  .

21.    Upon information and belief, Plaintiffs further allege that, at all times relevant herein, the Individual Defendants participated in, implemented, supervised, approved, and/or ratified the unconstitutional or illegal acts undertaken on behalf of the County Defendant with regard to which they are named as Individual Defendants.

22.    Plaintiffs are informed and believe, and thereupon allege that, at all times relevant herein, the Individual Defendants, and each of them, were the agents, servants and employees of the County Defendant with regard to which they are named as Individual Defendants, and were acting at all times within the scope of their agency and employment with the knowledge and consent of their principals and employers. At all times herein, Defendants, and each of them, were acting under the color of state law.

23.    When a County Defendant is named on state law claims, it is named not only under a theory of directly liability, but also as an entity responsible in respondeat superior for the actions undertaken by its agents, servants and employees. Said respondeat superior liability extends to and encompasses, but is

7

1    not limited to, the ministerial acts of implementing the contracts and ICS charges

2    challenged in this Complaint.

3         24.    When the phrase "Santa Clara County Defendants" is used in this

4    Complaint, it refers not only to the County Defendants, but to the Doe Defendants

5    and to any Individual Defendants who may be named with regard to that County.

6    **IV.    CLAIMS OF CLASS REPRESENTATIVES**

7         25.    Due to the cost of each call, whether through GTL or another

8    telecommunications company, Mr. and Mrs. Thatcher have paid many hundreds of

9    dollars to GTL since their son's imprisonment.  Plaintiffs Michael Thatcher and

10   Jeanette Thatcher bring this suit on behalf of themselves and on behalf of a class of

11   similarly situated persons, defined elsewhere in this Complaint.

12   **V.     CLASS ACTION FACTUAL ALLEGATIONS**

13        26.    The County of Santa Clara entered into *exclusive* contracts with

14   Global Tel*Link (hereinafter referred to as "GTL") for a period of several years

15   from on or about December 1, 2010 through the present, to provide pay telephone

16   services from Santa Clara's County's jails and other correctional facilities,

17   resulting in a monopoly for GTL who received the contract. Because these

18   contracts were/are exclusive to GTL and because inmates are literally a captive

19   market with no ability to choose another telephone company, there are no

20   competitive market forces to constrain the prices set by GTL.[2]

21        27.    In return for this monopoly power, however, GTL provide kickbacks,

22   masqueraded as "site commissions," to the County of Santa Clara.  Indeed, the

23   County of Santa Clara selected GTL to be the third party phone providers based on

24   the fact that they were the companies that agreed to pay the highest amount in

25

26

27   [2] *See In re Rates for Interstate Inmate Calling Servs*. I, 28 FCC Rcd. 14107, 14129 (F.C.C. Sept.
28   26, 2013).

annual commissions.  In order to generate these sizable kickbacks, "[f]amilies of incarcerated individuals often pay significantly more to receive a single 15-minute call from prison than for the basic monthly phone service."[3] In addition, GTL and Securus impose unnecessary and unconscionable fees and charges on accounts used for inmate telephone calls, all of which "inflicts substantial and clear harm on the general public,"[4] including Plaintiffs.

28.     Since County Defendant's commission contract provides a substantial minimum guaranteed fee against an identified percentage of the ICS charges for the County of Santa Clara after which GTL still make a substantial profit, it is obvious that, without the commissions, the charges would be substantially lower, and they bear no reasonable relationship to the actual cost of providing the ICS service.

29.     County Defendants use its annual commissions as provided by Penal Code §4025(c-d), which states that any money or commission collected by a jail for the use of pay phones primarily used by incarcerated inmates shall be deposited in the Inmate Welfare Fund and used first for the benefit, education and welfare of inmates and, to the extent not needed for that purpose, may be used for the maintenance of county jail facilities.  Nonetheless, rather than using the money primarily for vocational and educational programs, or other programs designed for the rehabilitation of inmates, much, if not most, of the money deposited in the Inmate Welfare fund is spent on general jails issues, including maintenance, equipment, office furniture, salaries and, in some instances, food. The

_____

[3] *Id.*, 28 FCC Rcd. at 14130.

[4] *In re Rates for Interstate Calling Servs*. II, 40, 15929, 15938 (F.C.C. Nov. 21, 2013).

demographics of the jail population of County Defendants' jails are highly disproportionate to the demographics of Santa Clara County as a whole. While Plaintiffs do not currently have statistical breakdown of Santa Clara County, there are readily available statistics available on the demographics of the California prison population which, on information and belief, mirrors that of the County jails. While approximately 29% of the California male prison population is African-American, less than 7% of the California population is African American. In 2013, 4.367 % of all African-American males (4,367 out of every 100,000) in California were imprisoned, compared to .922 % (922 out of every hundred thousand) for Latinos, and .488% (488 out of every hundred thousand) for whites. Said another way, African-Americans are imprisoned at almost 10 times the rate of whites, and Latinos are imprisoned at almost twice the rate of whites.

30.     The jail population is similarly disproportionately composed of persons with mental illnesses or drug addiction, both of which qualify as disabilities. A 2006 study by the U.S. Department of Justice found that more than half of all prison and jail inmates have a mental health problem compared with 11 percent of the general population, yet only one in three prison inmates and one in six jail inmates receive any form of mental health treatment. Other data indicate that approximately 20% of incarcerated inmates have a serious mental illness, and 30 to 60 % have substance abuse problems. The percentages increase significantly when including broad-based mental illnesses. For example, 50 percent of males and 75 percent of female inmates in state prisons, and 75 percent of females and 63 percent of male inmates in jails, will experience a mental health problem requiring mental health services in any given year.

31.     There are no security or prison administration issues at stake in the question of whether excessive commissions are paid, and there is no rational connection between those issues and payment of an excessive and unreasonable

commission. A substantial portion of the commissions does not go into the Inmate Welfare Fund at all, and, on information and belief, much of the funds that do go into that Fund do not redound to the benefit of the inmates. The sole impact of the relief sought here would be to reduce the funds received by the County Jail from the commissions. The requested relief has no direct impact on the security or operation of the jail. To the extent the requested relief impacts the jail's access to funds, jail funding is not an issue entitled to any judicial deference, and in any event is not a justification for an otherwise unlawful prison practice.

A. **FACTUAL ALLEGATIONS**

32. For a period of several years, from on or about December 1, 2010, continuing through the present, the County has had a written agreement with GTL to provide ICS for the SCCSD. Pursuant to that agreement, GTL agreed to pay, and did pay, the County a 61% of GTL revenue generated through ICS, which in 2015 amounted to over $1.7 million dollars.  As of August 1, 2015, the terms of the agreement between the County and GTL were amended and GTL will pay to the County a 71% commission on revenue generated through ICS.  Plaintiffs are currently unaware of the actual commission amounts that GTL has paid to this County for each year this agreement was in effect.

33. In addition, upon information and belief, the County also has an agreement with GTL and/or another third party provider, the details of which are currently unknown to Plaintiffs, but which generally involve the sale of prepaid direct call phone cards directly to inmates. As with the GTL arrangements, the calling cards have unreasonable, unjust and grossly excessive rates, with a connection fee and a rate per minute far exceeding the standard rate for local calls, or those of the Santa Clara County region.

34.     At no time did the County's residents vote to approve the foregoing commissions paid by GTL to the County or the rates charged to the inmates and/or Call Recipients pursuant to the County's agreements with GTL.

## VI.     CLASS DEFINITIONS

35.     The Named Plaintiffs bring this action on their own behalf, and on behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

36.     The Named Plaintiffs for the General Class of Santa Clara County are as follows:

    a.   Michael Thatcher and Jeanette Thatcher (parents of Daniel Thatcher who has established and paid for a pre-paid ICS account to allow them to communicate with their son).

37.     At times in this Complaint the General Class Named Plaintiffs may be referred to collectively by that title.

38.     Additionally, at times in this complaint, the General Class Named Plaintiffs who were or are inmates are referred to collectively as the "Inmate Plaintiffs", and the General Class Named Plaintiffs who were Call Recipients are referred to collectively as the "Named Call Recipient Plaintiffs."

39.     Also, the General Class Members who qualify as Call Recipients at times may be referred to collectively as "Call Recipient Class Members," and the General Class Members who qualify as inmates at times may be referred to collectively as "Inmate Class Members."

### A.     GENERAL CLASS DEFINED

40.     The General Rule 23(b)(2) Class (referring to the class of people seeking purely injunctive relief) of Santa Clara County is generally defined as follows:

Those individuals or entities that qualify as either a) a past, present or future Santa Clara County Jail inmate for whom a third party ICS account was in the past or present, or in the future will be, established, or b) a Call Recipient, i.e., inmates' family, friends, bailbondsmen, legal counsel, or others, who in the past or present has established, or will in the future establish, a pre-paid ICS account with a telecommunications company (currently GTL) that has contracted with the Santa Clara County to provide third party phone accounts for phone access to County Jail inmates, from which pre-paid accounts the phone charges and administrative or other fees for calls with inmates housed or confined in any Santa Clara County Jail Facility are paid, and out of which collected funds the County of Santa Clara is paid commissions pursuant to its contract with the telecommunications company.

41.   The General Rule 23(b)(3) Class (referring to the class of people seeking monetary relief in addition to injunctive relief) of Santa Clara County is generally the same, but limited to those who suffered monetary harm and so excludes certain future class members, and is defined as follows:

Those individuals or entities, through the earlier of the complete cessation of the challenged conduct or the final resolution of this case, that qualify as either a) a past or present Santa Clara County Jail inmate for whom a third party ICS account was established, or b) a Call Recipient, i.e., inmates' family, friends, bailbondsmen, legal counsel, or others, who in the past or present has established, or will in the future establish, a pre-paid ICS account with a telecommunications company (currently GTL) that has contracted with the County of Santa Clara to provide third party phone accounts for phone access to County Jail inmates, from which pre-paid accounts the phone charges and administrative or other fees for calls with

inmates housed or confined in any County of Santa Clara Jail Facility are paid, and out of which collected funds the County of Santa Clara is paid commissions pursuant to its contract with the telecommunications company.

## VII.   COMPLIANCE WITH RULE 23 REQUIREMENTS DEFINITIONS

### A.   NUMEROSITY

42.   Because California is such a large state, many of its jail systems are large compared to the average jail system in the United States.

43.   The Santa Clara County Jail has a daily average jail population numbering around 4,000 inmates.

44.   Average jail turnover rate in US jails is 15 times per year. http://apps.fcc.gov/ecfs/document/view;NEWECFSSESSION=KnsqVy1h8yKTrl2 gyF3g621nyZNJN2nJpXX6DFxznyXyXnh8LJhT!1736751079!-973180750?id=60001115155.

45.   While the turnover rate is smaller in large jails, the jail population turns over several times per year.

46.   Even assuming that only a small fraction of inmates and their families avail themselves of prepaid ICS accounts, on information and belief, each class for Santa Clara County numbers in the thousands.

### B.   COMMON ISSUES OF FACT OR LAW

47.   The County of Santa Clara has a contract with a telecommunications company, the terms of which provide a minimum annual guaranteed payment against a percentage that goes to the County Jail for the exclusive right to provide pre-paid Call Recipient phone accounts to receive inmate calls.

48.   The common issues of fact or law applicable to each class include:

      a.   Are the charges pursuant to which Defendant County of Santa Clara receives Contract Funds so excessive, arbitrary and/or unreasonable as to deprive or limit Class Members' ability to

14

reasonably communicate between Inmate Class Members and
their families and loved ones who are Call Recipient Class
Members in violation of the First Amendment and/or Due
Process clauses of the United States Constitution?

    b.  Are the charges pursuant to which Defendant County of Santa
Clara receives Contract Funds so excessive, arbitrary and/or
unreasonable as to deprive or limit Class Members' of due
process by virtue of their disproportionate relationship to the
reasonable cost to Defendant County of Santa Clara of ICS
usage?

    c.  Are the charges pursuant to which the Defendant County Santa
Clara receives Contract Funds so excessive, arbitrary and/or
unreasonable as to place unconstitutional conditions on Class
Members' exercise of their First and/or Fifth Amendment rights
and/or constitute an unlawful taking in violation of Federal due
process and unlawful takings clauses?

    d.  Are presumed damages available to Plaintiffs and the Class
Members for their non-economic damages for violation of the
federal rights asserted in the complaint?

49.     While there are additional common issues, these issues alone more
than establish that there are common issues.

**C.**    **TYPICALITY**

50.     In accordance with F.R. Civ. P. Rule 23(a), the claims of the Named
Plaintiffs are typical of each class for which they are named as a class
representative. All Named Inmate Plaintiffs were in the custody of Santa Clara
County Jail when they were subjected to the unlawful conduct alleged in the
Complaint, which unlawful conduct applied and applies to all inmates in Santa

Clara County Jail, who established, or whose family or other associates established, an ICS pre-paid account through Call Recipients. All Named Call Recipient Plaintiffs established a pre-paid ICS account with Santa Clara County Jail in order to be able to communicate with an inmate housed in Santa Clara County Jail, and were accordingly subjected to the unlawful conduct alleged in the Complaint, which unlawful conduct applied and applies to all Call Recipients who established an ICS pre-paid account through Call Recipients.

51.     Thus, the Named Plaintiffs for the General Class of Santa Clara County have the same interests, and have suffered the same type of damages as the Class Members of that Class. Named Plaintiffs' claims in this Complaint are based upon the same or similar legal theories as the claims of the Class Members. Each class member herein suffered actual damages as a result of the actions of each Defendant applicable to that class. The actual damages suffered by Plaintiffs are similar in type and amount to the actual damages suffered by each class member.

52.     The economic losses suffered by each class member are commonly determined by the amount paid by that class member for the ICS charges paid by or on behalf of that class member, plus interest to be determined.

**D.     ADEQUACY OF REPRESENTATION**

53.     In accordance with F.R. Civ. P. Rule 23(a), the Named Plaintiffs will fairly and adequately protect the interests of the class. The interests of the Named Plaintiffs are consistent with and not antagonistic to the interests of each class.

54.     Similarly, class counsel are experienced class action litigators who will fairly and adequately protect the interests of each class.

**E.     PREDOMINANCE AND SUPERIORITY**

55.     In accordance with Fed.R.Civ.P. Rule 23(b)(1)(A), prosecutions of separate actions by individual members of the class would create a risk that inconsistent or varying adjudications with respect to individual members of the

class would establish incompatible standards of conduct for the parties opposing the class.

56.     In accordance with Fed.R.Civ.P. Rule 23(b)(1)(B), prosecutions of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class that would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

57.     In accordance with Fed.R.Civ.P. Rule 23(b)(2), Plaintiffs are informed and believe, and thereon allege that Defendants have acted on grounds generally applicable to the class.

58.     In accordance with Fed.R.Civ.P. Rule 23(b)(3), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties. The interests of Class Members in individually controlling the prosecution of a separate action is low in that most Class Members would be unable to individually prosecute any action at all. The amounts at stake for individuals are such that separate suits would be impracticable in that most members of the class will not be able to find counsel to represent them on an individual basis. It is desirable to concentrate all litigation in one forum because all of the claims arise out of the same basic pattern of conduct, the legality of which is subject to class wide determination. It will promote judicial efficiency to resolve the common questions of law and fact in one forum rather than in multiple courts. Because the unlawful conduct alleged herein is systemic, it is particularly well suited to resolution on a class basis, as the critical questions in the case may be answered on a class wide basis. Indeed, in this case, there are no individualized

1   issues at all regarding liability. Either the charges are lawful under the legal

2   theories implicated by this Complaint or they are not.

3       59.    The claims raised herein are susceptible to common proof. Defendant

4   County of Santa Clara has a contract under which it receives a minimum fee

5   against a percentage of certain proceeds in exchange for its grant of exclusive ICS

6   rights. The phone charges and related fees that Class Members pay are uniform

7   across Class Members, and are discoverable from the contracted

8   telecommunications company computerized records.

9       60.    Plaintiffs know of no difficulty that will be encountered in the

10   management of this litigation that would preclude its maintenance as a class action.

11   The class action is superior to any other available means to resolve the issues

12   raised on behalf of the classes. The class action will be manageable because

13   computerized records systems exist from which to ascertain the members of the

14   class and to ascertain some of the proof relevant to Plaintiffs' claims. Liability can

15   be determined on a class-wide basis based on class wide evidence because the

16   Plaintiffs complain of systemic and widespread policies and practices that are

17   uniform for Defendant County of Santa Clara, based on their particular contract

18   with the relevant telecommunications company. Named Plaintiffs and the Class

19   Members are entitled to economic damages under federal law, and to such other

20   damages as may be determined by the Court or the trier of facts; and, in any event,

21   individualization or variability in damages is not a bar to a liability certification

22   based on common liability issues.

23       61.    Plaintiffs do not know the identities of the Class Members. The

24   identities of the Class Members are ascertainable from a combination of Santa

25   Clara County Jail and the County's contracted telecommunications company

26   records. Plaintiffs are informed and believe, and thereon allege, that the foregoing

27   computer records reflect the identities, including addresses and telephone numbers,

28

18

of the persons who qualify as Class Members, and the charges incurred, and that it is possible to ascertain from those records who qualifies as a class member of each class.

62.     In accordance with Fed.R.Civ.P. Rule 23(b)(3), Class Members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Plaintiffs are informed and believe that the telecommunications company computer records and County Jail records for Defendant County of Santa Clara contain a current or last known address for Class Members, as well as the billing information pertinent to each class member.

## VIII.  APPROPRIATENESS OF EQUITABLE RELIEF

63.     Inmate Plaintiffs and Class Members currently incarcerated, and Call Recipient Plaintiffs and Class Members with current and operating ICS accounts, are and will continue to be, subject to the unlawful ICS phone charges addressed in this Complaint.

64.     Defendant County of Santa Clara's continuing violations of law under applicable United States constitutional and statutory provisions causes Plaintiffs and Class Members continuing, sweeping and irreparable harm.

65.     Because no adequate remedy at law exists for the injuries alleged herein, Plaintiffs seek injunctive relief under both federal and state law, including restitution in amounts to be determined at trial based on the unlawful payments plus interest.

## IX.   DAMAGES

66.     As a result of Santa Clara County Defendants' unlawful conduct, Plaintiffs and Class Members have suffered, and will continue to suffer, compensable damages in amounts to be determined at trial, including economic, physical and emotional distress damages, in amounts according to proof at trial.

The economic damages and/or refund/restitution/disgorgement are susceptible to class wide proof based on the computerized records of the applicable telecommunications company, the Santa Clara County Jail, and the applicable documents and records memorializing and documenting the ICS charges complained of herein.

67.    Plaintiffs do not seek retroactive reduction of the rates charged by phone companies. Rather, the monetary relief they seek is limited to reimbursement to the class of the commission the County has received to the extent they do not reflect the reasonable facility cost of supporting ICS, plus interest. Nor do Plaintiffs seek to require multiple phone companies operate in the Jail. Nor do Plaintiffs seek to prevent the County for entering into future exclusive ICS contracts with a particular phone provided. The future relief Plaintiffs seek is to restrict the amount of commissions for which the County contracts in the future to an amount that reasonably reflects the cost to the County Jail to support the provision of ICS access.

68.    Plaintiffs and the class members are entitled to presumed damages under federal law.

69.    Santa Clara County Defendants acted maliciously, fraudulently or oppressively, and in reckless disregard of the Plaintiffs' and Class Members' rights, thereby entitling Plaintiffs and the Class to an award of punitive damages from all Defendant individuals except the County Defendants or any governmental entity.

## X.    CLAIMS

### A.    VIOLATIONS OF 42 U.S.C. §1983 [BY ALL PLAINTIFFS AGAINST SANTA CLARA COUNTY DEFENDANTS]

70.    Plaintiffs incorporate all previous and subsequent paragraphs of this Complaint into this claim.

20

71.     Defendant County of Santa Clara is a local government entity susceptible to suit under 42 U.S.C. §1983.  All of the conduct alleged herein was done under color of state law, pursuant to a governmental policy, custom or practice. Each of the contracts alleged herein was approved by, and entered into under the authority of, the Santa Clara County Board of Supervisors.

72.     Plaintiffs have a First Amendment right of access to telephones because no other means of communication is an adequate substitute for the telephone.  Specifically, neither in person visits, which are unrealistic for many people, nor mail, which is difficult to accomplish and requires a level of literacy not possessed by a significant portion of class members, are a substitute for telephone communication.  This is a fundamental constitutional right.

73.     The use of the telephone is an expressive activity protected by the First Amendment.  Such expressive activity is a fundamental constitutional right.

74.     Even if the County Jail has discretion to deny telephone access to inmates, it has chosen to provide such access.  Accordingly, since it has chosen to provide such a benefit to inmates and their families, it may not condition class members' exercise of, and access to, that discretionary benefit on coercive or unreasonable conditions that require payment of money not reasonably related to that benefit or its costs, which is what it has done here.

75.     The conduct alleged herein violates and unduly burdens the Class Members' rights of association and meaningful personal communication with family, friends, associates and other Call Recipients in violation of the First Amendment to the United States Constitution.

76.     The conduct alleged herein violates the Fifth Amendment to the United States Constitution. Both Call Recipients and Inmate Plaintiffs' and Class Members' ability to speak to loved ones, friends, and counsel is unconstitutionally conditioned on ICS payments that unreasonably burden the exercise of Fifth

Amendment rights to just compensation, unreasonably forces Plaintiffs and the classes alone to bear public costs that should be borne by the public as a whole, and additionally bear no reasonable nexus or rough proportionality to the required payments and the cost to, or burden or effect on, the County of Santa Clara by allowing the provision of such calls. The FCC has determined that, for jails with an average daily population above 2,500, the facility cost of supporting ICS is between $0.01-$0.02 per minute, based on information provided by the National Sheriff's Association.  (See 8/9/16 FCC Order on Reconsideration, 16-102, pg. 15 ¶ 26.  Plaintiffs and Class Members' rights to due process of law were unlawfully abridged, as explained above, and their rights to equal protection of the laws were denied in that the conduct complained of herein was arbitrary and capricious.

77.    ICS charges are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to control inmates' access to the outside world, and therefore government entities can pressure and coerce Class Members into paying hugely disproportionate and unreasonable phone charges in order to be able to communicate with loved ones and others herein referred to as Call Recipients.

78.    Even if the Santa Clara County Defendants could deny inmate phone calls altogether, that is not what has occurred. Once ICS phone calls are allowed, it cannot condition that benefit by infringing and burdening Fifth Amendment rights by forcing Plaintiffs and Class Members to pay funds that are unreasonable and substantially disproportionate to the cost to, or burden or effect on, Santa Clara County Defendants for allowing ICS calls.

79.    Accordingly, Santa Clara County Defendants' actions violate Plaintiffs' and Class Members' Fifth Amendment rights, and/or place unconstitutional conditions on their exercise, thereby violating the Fifth

Amendment's prohibition on unconstitutional conditions and taking private property without just compensation.

80.    As a direct and proximate result of Santa Clara County Defendants' violations, Plaintiffs and the Class Members have been damaged in amounts to be determined at trial.

81.    As a direct and proximate result of Santa Clara County Defendants' violations, Plaintiffs and the Class Members are entitled to injunctive relief, including restitution, in amounts to be determined at trial based on the unlawful payments plus interest.

**B.    VIOLATION OF SHERMAN ANTITRUST ACT [BY ALL PLAINTIFFS AGAINST SANTA CLARA COUNTY DEFENDANTS] – INJUNCTIVE RELIEF ONLY**

82.    Plaintiffs incorporate all previous and subsequent paragraphs of this Complaint into this claim.

83.    For purposes of this cause of action, the relevant market is Inmate Phone Services within Santa Clara County jails.  Because inmates and call recipients, including Plaintiffs, are a captive market in that they have no access to phone services other than those offered by the County Defendants, inmate phone services constitute a distinct market from phone services provided outside jails and prisons.  Indeed, there are companies, such as GTL and Securus, which compete against each other solely in the inmate phone service market.

84.    Rather than using their market power to obtain the most competitive phone prices for its consumers (inmates and call recipients), including Plaintiffs, through a typical bidding process, or by allowing more than one company to provide inmate phone services, the County Defendants did the opposite. They used their market control over the jails to enrich themselves at the expense of the phone services end consumers (inmates and call recipients), entering into an exclusive

23

1   agreement with the phone company willing to pay the highest kickback to the

2   County.

3       85.   By providing GTL exclusive access to a captive market, the County

4   Defendants allow GTL to prey on Plaintiffs and the class they seek to represent by

5   charging exorbitant rates, without any competitive pressures.  In addition, by

6   awarding the contract to GTL based on GTL agreeing to pay the County at least

7   $1.7 million dollars per year, County Defendants functionally require GTL to take

8   advantage of its the exclusive market power granted it by the County Defendants to

9   charge rates far in excess of the rates that would prevail in a competitive market.

10      86.   On the other hand, if the County Defendants permitted more than one

11  company to provide phone services within its jails and/or selected an exclusive

12  provider based on which company offered the most competitive pricing for end

13  consumers rather than the highest kickback to the County, consumers like

14  Plaintiffs would receive the benefits of such market competition, including lower

15  prices and increased quality and selection.

16      87.   County Defendants' conduct not only thwarted competition for inmate

17  phone services within County Defendants' jails, but totally eliminated competition

18  except competition as to who would provide the County Defendants the greatest

19  benefit in exchange for grant of the exclusive contract.

20      88.   The direct, proximate, and foreseeable result and effect of the

21  agreement between County Defendants and GTL was that competition for inmate

22  phone services within County Defendants' jails provided no market choice to the

23  ultimate consumer of inmate phone services. Consumers of inmate phone services,

24  like Plaintiffs, must pay supra-competitive prices for their phone calls.

25      89.   The exclusive provider agreements described herein between the

26  County of Santa Clara and GTL (hereinafter referred to as the "Agreement")

27  constitutes an unreasonable, vertical agreement in restraint of trade in violation of

28

Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  The anticompetitive effects of the Agreement are not overridden or justified by any procompetitive benefits stemming from the Agreement.  The charges paid by consumers to use inmate telephone services are significantly above the actual cost of providing the telephone services.  Further, there are no safety concerns that require such monopolistic arrangements, and certainly no requirements that the County receive such substantial kickbacks, or any kickback at all.  To the extent that any procompetitive benefits result from the Agreement, they could be achieved by less restrictive means.

90.     As a direct, proximate, and foreseeable result of the foregoing agreement, Plaintiffs have been injured by being charged supra-competitive prices for use of inmate phone services within the County's jails.

91.     County Defendant possesses monopoly power over the relevant market (previously defined). It has the power to both control prices by requiring large commissions and the power to exclude competition by allowing only one inmate phone provider access to the market. It controls 100% of the relevant market. It has used its monopoly power to foreclose competition and gain a competitive advantage in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

92.     County Defendant and GTL have entered into the previously described contract and agreement with the full knowledge and intent to restrain trade, including trade among the various states; have injured competition, and caused an antitrust injury resulting from that anti-competitive conduct to the end consumers (inmates and call recipients) who avail themselves of inmate phone services.

93.     The commissions constitute a taking of property (money), and, by physically taking the money, also constitute an immediate harm.  There are no state administrative avenues of relief to exhaust.

94.     GTL is not named as a Defendants herein but is an unnamed co-conspirator.

95.     GTL is a nationwide company that engages in commercial activities throughout the United States. GTL describes itself on its website as "the leading provider of integrated corrections technology for facilities across North America." GTL lists on its website facility specific information for correctional facilities in California, Illinois, Arizona, Pennsylvania and Indiana. Career opportunities applications for anywhere in the United States are handled through its Human Resources offices in Mobile, Alabama. GTL provides a single contact number to its correctional facilities clients throughout the United States, available on its website. GTL integrates its technology on a national basis and consumer inquiries, wherever based, are handled through a single, integrated Service Center. On information and belief, GTL orders equipment used for its service from the stream of interstate commerce, and many of the members of the Call Recipient class are outside the state of California. Similarly, Defendant County and its County jails regularly do business with companies throughout the United States, and regularly orders products, including the products used for the foregoing contracts, from the stream of interstate commerce. On information and belief, GTL orders equipment used for its service from the stream of interstate commerce, and many of the members of the Call Recipient class are outside the state of California. Similarly, Defendant County and its County jails regularly do business with companies throughout the United States, and regularly orders products, including the products used for the foregoing contracts, from the stream of interstate commerce.  Thus, the conduct challenged herein has a substantial effect on interstate commerce.

96.     Although Defendant County of Santa Clara is a political subdivision of the State of California, the conduct challenged herein has not been taken pursuant to a clearly articulated and affirmatively expressed state policy, and the State of California did not affirmatively contemplate that Counties and County jails would displace competition and has not delegated to Counties or County jails the authority to act anti-competitively in setting fees or commissions.  Enactment of the limitations on local or state government's authority to impose assessments, fees or taxes by virtue of Articles 13 C and D to the California Constitution makes clear that local authorities are not authorized to establish fees of any kind that are not reasonably related to their costs, which necessarily by its terms include anticompetitive fees and charges.

97.     The Named Plaintiffs and the members of each class who do currently, or may in the future, use or avail themselves of the inmate telephone service provided by GTL will suffer irreparable harm, and there is no adequate remedy at law, unless the Court grants injunctive relief as is further described in the Prayer for Relief section of this complaint.

## XI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class Members they seek to represent, request monetary and injunctive relief against each defendant as follows:

1.      General and special damages according to proof;

2.      A refund/disgorgement/restitution of the monies paid by Class Members that, in turn, were used to pay the contracted commissions to County Defendants the amounts contracted for in connection with the inmate calling agreements of each with telecommunications companies.

3.      Economic, physical and emotional distress damages (in addition to the damages sought in the preceding paragraph, or to the extent not covered or

1   awarded pursuant to that paragraph), and physical and emotional distress and other

2   damages according to proof.

3         4.     Temporary, preliminary and permanent injunctive relief prohibiting

4   Defendant County of Santa Clara from continuing to engage in the unlawful

5   practices complained of herein as follows:

6                  a.  Prohibiting the Defendants from renewing, or entering into

7                     new, ICS contracts under which it receives commissions or fees

8                     except exceeds the reasonable cost of providing the service of

9                     allowing telephone access cost after determination of such

10                   amounts by the court;

11                 b.  Prohibiting the Defendants, while the current challenged

12                   contract remains in effect, from using the commissions it

13                   receives under the contract for any purpose other than

14                   placement in a court supervised fund for any purpose other than

15                   ultimately restoring such funds back to the class members who

16                   paid charges from which said commissions were taken to the

17                   extent of said commissions.

18         5.     Temporary, preliminary and permanent injunctive relief requiring

19   Defendant County of Santa Clara to provide refunds/disgorgement/restitution of

20   the monies paid or to be paid by Class Members as a form of equitable relief.

21         6.     Class wide presumed damages for non-economic damages for class

22   members on the federal claims. ,

23         7.     Attorneys' fees and costs under 42 U.S.C. §1988, 15 U.S.C. § 26,

24   and whatever other statute or law may be applicable.

25         8.     Grant any other relief that this Court may deem fit and proper.

26

27

28

1   DATED: August 18, 2016          Respectfully Submitted,

2

3                                   KAYE, MCLANE, BEDNARSKI & LITT, LLP
                                    RAPKIN & ASSOCIATES, LLP
4

5                                   By:  /s/   Barrett S. Litt

6                                        Barrett S. Litt
                                         Attorneys for Plaintiffs
7

8

9                          **DEMAND FOR JURY TRIAL**

10          Plaintiffs, on behalf of themselves individually and on behalf of the Class,

11   demand a jury trial to the extent available under applicable law.

12

    DATED: August 18, 2016          Respectfully Submitted,
13

14                                  KAYE, MCLANE, BEDNARSKI & LITT LLP
                                    RAPKIN & ASSOCIATES, LLP
15

16                                  By:  /s/   Barrett S. Litt

17                                       Barrett S. Litt
                                         Attorneys for Plaintiffs
18

19

20

21

22

23

24

25

26

27

28
                                         29